IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-105-BO

| | |
|---|---|
| MOUNT OLIVE PICKLE COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | O R D E R |
| ) | |
| TIDEWATER TRANSIT CO., INC., ) | |
| ) | |
| Defendant. ) | |

This cause comes before the Court on plaintiff's motion to remand and defendant's motion to compel arbitration and stay proceedings. The appropriate responses and replied have been filed, and a hearing was held before the undersigned on July 17, 2019, at Raleigh, North Carolina. For the reasons that follow, plaintiff's motion to remand is denied and defendant's motion to compel arbitration and stay proceedings is granted.

## BACKGROUND

This case concerns a load of salt transported by defendant Tidewater to plaintiff Mount Olive Pickle. Tidewater is a motor carrier located in Fayetteville, North Carolina which transports, among other things, food-grade salt for Cargill, Inc. to a number of purchasers using dedicated trailers. The salt arrived at Tidewater by rail from Cargill's salt production facilities in other states, including New York. Tidewater transferred the salt from the rail car to a dedicated trailer and then transported the salt by tractor trailer to Cargill's purchasers, here Mount Olive Pickle. The salt was then pumped via a closed system directly from Tidewater's trailer into Mount Olive Pickle's lixator, a chamber that creates the brine for the pickling process. On some occasions extra salt was also pumped from the Tidewater truck to a salt pad that Mount Olive Pickle used to increase the

salinity of the pickling brine if needed. Mount Olive Pickle ordered salt directly from Cargill by providing it with a purchase order number and a requested delivery date. Cargill then issued a bill of lading to Tidewater, which then transferred salt from the railcars to its dedicated trailers and delivered the salt to Mount Olive Pickle.

On Friday, September 29, 2017, Mount Olive Pickle discovered small transparent and white plastic pellets in its lixator and on the salt pad. As it had been unaware that the salt had been contaminated with plastic pellets, Mount Olive Pickle used the salt in its pickling process and contaminated its consumable pickle products. Mount Olive Pickle notified Cargill of its discovery, and Cargill notified Tidewater. During a meeting between the three, Mount Olive Pickle discovered that Tidewater also transports plastic pellets of the same type found in Mount Olive Pickle's equipment out of its Fayetteville depot.

This lawsuit ensued and was filed by Mount Olive Pickle in Wayne County, North Carolina Superior Court on February 8, 2019. [DE 1-6]. Mount Olive Pickle's complaint alleges a single count of negligence. On March 14, 2019, Tidewater removed the action to this Court on the basis of its federal question jurisdiction. [DE 1]. Specifically, Tidewater contends that Mount Olive Pickle's claim arises from the transportation of goods by motor carrier involving interstate commerce, and the claim for negligence is preempted and governed by the Carmack Amendment, 49 U.S.C. § 14706.

## DISCUSSION

I. Motion to remand.

The first question before this Court is whether the instant action arises under federal law such that federal jurisdiction exists. Removal of a civil action from state court is only proper where the federal district courts would have original jurisdiction, 28 U.S.C. § 1441, and it is the burden

2

of the removing party to show that jurisdiction lies in the federal court. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, whether the district courts have federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But district courts also have federal question jurisdiction over state law claims that are completely preempted by federal law. *See Lontz v. Tharp*, 413 F.3d 435, 439–440 (4th Cir. 2005).

The Carmack Amendment to the Interstate Commerce Act of 1887 "addresses the liability of common carriers for goods lost or damaged during a shipment over which the Interstate Commerce Commission has jurisdiction. . . . [and creates a] national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993); *see also* 49 U.S.C. § 13501(1)(A). The Carmack Amendment "provide[s] the *exclusive* cause of action for claims arising out of the interstate transportation of goods by a common carrier." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 776 (5th Cir. 2003) (emphasis in original). Because claims implicating the Carmack Amendment are completely preempted, removal under 28 U.S.C. § 1441 is appropriate. *Id.* at 778.

Whether the Carmack Amendment governs Mount Olive Pickle's negligence claim depends on whether the nature of the shipment at issue was inter-or-intrastate.

> Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation.

3

*S. Pac. Transp. Co. v. I. C. C.*, 565 F.2d 615, 617 (9th Cir. 1977) (citation omitted). "[I]f the final intended destination at the time the shipment begins is another state, the Carmack Amendment applies throughout the shipment, even as to a carrier that is only responsible for an intrastate leg of the shipment." *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 75 (2d Cir. 2001).

There is no dispute that Cargill's salt that Tidewater transported to Mount Olive Pickle was transported from New York to North Carolina and therefore traveled in interstate commerce in order to reach North Carolina. Mount Olive Pickle contends that, however, the conduct at issue here involved only the *intra*state shipment of Cargill's salt from Tidewater's depot in Fayetteville, North Carolina to Mount Olive Pickle's facility in Mount Olive, North Carolina. In support, Mount Olive Pickle relies on its complaint which references only salt that is transported from a third-party vendor to Mount Olive Pickle Company by Tidewater by truck, [DE 1-6] Compl. ¶¶ 5,7, and a bill of lading which shows a shipment originating in Fayetteville and terminating in Mount Olive. [DE 14-3] Bowen Decl. Ex. 2. Mount Olive Pickle further contends that the intent of Cargill, the shipper, was not fixed until the final destination of the salt was identified, and that Cargill could not form such intent until Mount Olive Pickle placed an order for salt, which would then be shipped from Tidewater's depot to Mount Olive. In other words, in Mount Olive Pickle's view, Cargill shipped its salt to Tidewater's depot to hold, and Cargill would fill Mount Olive Pickle's salt order from its salt at Tidewater's depot when Mount Olive Pickle placed an order. Thus, plaintiff argues, Cargill's intent was that the shipment be intrastate, and the Carmack Amendment is therefore not implicated.

Although Mount Olive Pickle has characterized Cargill's shipment of salt as two distinct transactions – one interstate shipment to Tidewater and one intrastate shipment from Tidewater to Mount Olive Pickle – where, as here, the shipper ships its goods across state lines to customers in

4

other states, the fact that the goods might stop in a temporary warehouse or other staging facility does not transform the nature of the shipment from interstate to intrastate. *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 898 (7th Cir. 2009); *see also Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5 F.3d 911, 917 (5th Cir. 1993). While the complaint does not allege that the stop at Tidewater's depot was merely temporary, the inferences drawn from the complaint and the record before the Court support such a conclusion.

The bills of lading in the record reflect that Mount Olive Pickle Company is the consignee and Cargill is the shipper. *See* Bowen Decl. Ex. 2. Cargill's salt is held at the Tidewater facility generally for seven to nine business days; to hold the salt for any longer would subject it to conditions which would ruin the salt. [DE 18] Johnson Decl. ¶¶ 14-15. Moreover, it has not been genuinely disputed that when Cargill ships its salt from New York to Tidewater's depot in Fayetteville, that shipment is part of a continuous supply chain created to meet customer demand, with Tidewater serving as the last leg in the chain. *Id.* ¶ 10; *Project Hope*, 250 F.3d at 75. That the bills of lading in the record reflect a wholly intrastate shipment from Fayetteville to Mount Olive does not affect the character of the shipment. *See id.; see also Advanced Sterilizer Dev. & Design, Inc. v. Roadway Express, Inc.*, No. 1:02CV 285, 2002 WL 31165144, at *3 (M.D.N.C. Aug. 21, 2002) (state law claims may be preempted by Carmack Amendment even where there is no bill of lading).

Although Mount Olive Pickle's allegations are tailored to avoid invoking transportation of interstate character, the record currently before the Court, to include the declarations submitted by both parties, supports a finding that the negligence claim is completely preempted by the Carmack Amendment. Removal to this Court was therefore proper and the motion to remand is appropriately denied.

5

II.     Motion to compel arbitration and stay proceedings.

The Court has determined that the Carmack Amendment controls Mount Olive Pickle's claim against Tidewater. Two agreements are implicated by Tidewater's motion to compel arbitration: a bulk transfer agreement (BTA) between Tidewater and Cargill dated July 1, 2010, and subsequent amendments, [DE 10-2] Famularo Decl. Ex. 1, as well as a motor transportation agreement (MTA) dated September 21, 2010, along with subsequent amendments. [DE 10-3] Famularo Decl. Ex. 2. The BTA pertains to the transportation services performed by Tidewater at its depot, including receiving and unloading railcars, storing Cargill food products, and transferring Cargill products to trucks for delivery. The MTA pertains to the transit of Cargill goods from the depot to a consignee. The BTA contains a mandatory arbitration provision. *See* BTA ¶ 13.6.

"A bill of lading is a contract between the carrier and the shipper." *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1098 (9th Cir. 2011). Under the Carmack Amendment, the "bill of lading [also] determines the rights of the consignee." *Mexican Light & Power Co. v. Texas Mexican Ry. Co.*, 331 U.S. 731, 733 (1947). Additionally, written agreements which are referenced in a bill of lading are enforceable. *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 144 (4th Cir. 2013).

Mount Olive Pickle contends that it is not a party to the BTA or MTA and should not be bound by either. However, because of its classification as a consignee, or one to whom the carrier may make lawful delivery under the contract, Mount Olive Pickle is "legally bound by the provisions of . . . the contract between the parties to a transaction under the Interstate Commerce Act" as to its claim arising under the Carmack Amendment. *Harrah v. Minnesota Min. & Mfg. Co.*, 809 F. Supp. 313, 318 (D.N.J. 1992); *see also Migdal Ins. Co., Ltd. v. Schenker Int'l Inc.*, No. 07-21011-CIV, 2009 WL 10669109, at *6 (S.D. Fla. Feb. 20, 2009) ("Since a consignee is entitled

6

to insist upon compliance with the terms of the bill of lading, it is correspondingly bound by those terms that constitute a condition precedent to recovery for loss from the carrier.").

The bills of lading further expressly state that Tidewater received Cargill's salt "subject to individually determined rates or contracts that have been agreed upon in writing between the carrier [Tidewater] and the shipper [Cargill] . . .." Famularo Decl. Ex. 5. The referenced contract in the bill of lading would include the BTA, which governs the transportation services performed by Tidewater at its depot for Cargill. Accordingly, the Court holds that Mount Olive Pickle is bound by the arbitration clause.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, governs the resolution of private disputes through arbitration. *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). Section 2 of the FAA provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) (construing 9 U.S.C. § 2 as making written arbitration agreements binding unless the underlying contract is otherwise void).

The "question of arbitrability" is to be decided by the court unless the parties clearly and unmistakably provide otherwise. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Courts have "no choice but to grant a motion to compel arbitration where a valid arbitration clause exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

Mount Olive Pickle does not contest that the BTA contains a valid and enforceable arbitration clause, only that it is not bound by the BTA, but the Court has concluded that Mount Olive Pickle is bound by the BTA and its arbitration clause. Further, this action plainly falls within the purview of the BTA as it concerns the transfer of salt from rail cars to trailers, during which time the complaint alleges the salt was contaminated by plastic pellets. *See* Compl. ¶ 7. As a dispute exists between Mount Olive Pickle and Tidewater, the BTA includes an arbitration provision which covers the dispute, the transaction at issue involves interstate commerce, and Mount Olive Pickle has failed or refused to arbitrate the dispute, Tidewater has established that the motion to compel arbitration must be allowed. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Adkins*, 303 F.3d at 501.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand [DE 12] is DENIED. Defendant's motion to compel arbitration and stay proceedings [DE 8] is GRANTED. The parties are DIRECTED to notify the Court at the conclusion of the arbitration proceedings and to inform the Court as to whether any issues remain for adjudication. The clerk is DIRECTED to remove this case from the Court's active docket during the pendency of the arbitration proceedings and to return it to the active docket upon notice by the parties that the arbitration proceedings have concluded.

SO ORDERED, this ___9___ day of August, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE